Good morning. Clerk, please call the first case. 11-304-2402, Riley Fleming. Counsel, please step forward. Identify yourself for the record and how long you wish to make your argument. Good morning, Your Honors. My name is Brett Zebe from the State Appellate Defender's Office and I represent Mr. Riley Fleming. If I could just have the customary amount of time the Court allows and a couple minutes of rebuttal would be nice. Thank you. Matthew Connors, on behalf of the people of the State of Illinois, at the same time requested as the defendant. Thank you. Okay, thank you. Mr. Zebe. Good morning, Your Honors. May it please the Court. Some things go really well together. Peanut butter and chocolate, campfires and s'mores, but some things are best kept separate. And that's really the crux of why we are here today arguing this case. The trial court should have kept Riley Fleming's case, what I call case number one in the briefs, and Brandon Meyer's attempt murder of two Chicago police officers, what I call case number two in the briefs, separate. And the State made a conscious decision at the outset to keep these cases separately. They indicted them separately. There's two separate indictments. There's two separate cases. And then about 14 months later, the State changed its mind and filed a motion to join these cases. The trial court erred in allowing that joinder. And that's because the trial court misinterpreted the statute for joinder of related prosecutions. The way that that statute is written, it says that two or more charges can be tried together if the offenses and the defendants could have joined in a single charge. But the way the trial court looked at this statute was to basically do an or if the offenses or the defendants. Since Mr. Fleming was not charged with the offenses in case two, just looking at the plain language of the statute, those charges could not have been joined with the charges in case two, the attempt murder charges. Counsel, when you look at section 114.7, don't you also have to examine section 111.4, which deals with joinder of offenses? And it says if the offenses charged, whether felonies or misdemeanors of both, are based on the same act or on two or more acts which are part of the same comprehensive transaction. Don't we have to read those two statutes together? Well, I think the court does have to look at that 511-104, but what's critical here is that the state made a conscious decision not to join these at that time. They did not charge Mr. Fleming with those offenses. At the outset, they could have. They could have, in their discretion, decided to charge him. So you don't indict that they could have, but they did. They could have indicted a ham sandwich. But that's not what we're talking about. We're talking about Mr. Fleming. Right. Well, they could have charged. They could have charged. They had the discretion to charge Mr. Fleming with those offenses. We can't go inside their minds and know why they decided not to. I think there's a very strong argument that the offenses that he was charged with in Case 1 were over when they got in the car and started to drive away, but we don't know why they didn't. But the critical point here is they did not. They did not charge him with those offenses. They waited 14 months to file a joinder motion. Tell me why we cut off Case 1 when they get in the car and drive away. Because the offense is over. Did they try to evade the police after they had committed these offenses? Well, the police didn't know they had committed that offense. The police saw them not fully stop. They went through a red light, basically. The police didn't know anything about Case 1. But the police did know they had committed a couple of offenses, correct? Well, they were charged with those offenses. Yes. So you're asking the court to ignore? I'm not asking the court to ignore that, Your Honor. I'm asking the court to put itself in the position of the trial court 14 months later when the State has filed this motion for joinder. There's a couple of things that the court has to consider. It has to think of, I mean, the whole purpose of joinder is judicial economy. But on the flip side of that is also severance and potential prejudice to the defendant. But isn't that the real issue here, whether there's prejudice? So with regard to that issue, to me that's the heart of the issue. What are the indicia of prejudice? Well, as I argue in my brief, Your Honor, there's four main ways that Mr. Fleming was prejudiced by this. First is that it heard a ton of evidence that was totally irrelevant to the case that he was actually on trial for. I mean, ideally. So what? I mean, that happens all the time when these cases are tried together. Somebody is not indicted in all counts. So there's going to be evidence on other counts that doesn't have anything to do with the counts that a particular defendant might be involved in. And that's not atypical. That's true, Your Honor. But in that context, there's two juries. Not necessarily. Well, not necessarily. But in a case where there are co-defendants that are both charged with, I mean, they're charged together in this one case. And then the jury hears all this evidence that five minutes later his co-defendant, that he's alleged to be accountable for actions that occurred five minutes before, shot at two Chicago police officers. And that information comes in at the trial. That's very difficult evidence to disregard. Well, but there was the judge gave instructions with regard to that. Well, that's true. And the counts are very different because, I mean, they had different counsel. The claims or the counts are very different in what was being proven and what was being asked and the witnesses. Well, it is true that they were given IPI 3.05, which basically tells the jury they are supposed to give separate consideration to each defendant. Each is entitled to have his case decided on the evidence of the law that applied. They were also given an instruction that Fleming was charged with armed robbery of Mr. Thomas, the attempt armed robbery of Pendleton, and the ag discharge as to Pendleton. But on the flip side of that, before the trial even started, the judge himself told the jury that both of these guys were charged with all of these offenses. The judge told the jurors that. But that was corrected, it seems to me, by what was stated later on. Well, I would argue that it wasn't. And then also in the closing argument of the prosecutor, the prosecutor argued that Mr. Fleming and Mr. Myers were responsible for this crime spree that occurred on that date. So the jury. Crime spree doesn't mean necessarily it's talking about the shooting of the police officers. Well, I think the jury wasn't clearly told what evidence it could consider and what it could not. I mean, ideally the. The instructions didn't instruct the jury on what evidence. But no, Your Honors, the jury was never instructed when specific evidence came in. They weren't given limiting instructions at the time evidence came in or right after to tell them what evidence they could consider against Fleming and what they could not. I mean, here we have our own Supreme Court in Fernandez is still clarifying what accountability law is. They're still explaining to appellate courts, you know, what a common criminal design is. So there's it's it's not surprising that the jury in this situation would be confused as to a generic accountability instruction that it's given. And a very general instruction about it has to only consider evidence that came in against Mr. Fleming in the one case and not the other. But it wasn't told what that evidence was. There was never a point in the trial where the judge said, jury, you are not to consider this as to Mr. Fleming. All the evidence that came in about shooting at the police officers for Mr. Myers running away and then shooting at the police officers. All the evidence that came in regarding the evidence technicians, the forensic scientists. There's a whole host of witnesses that testified in this case that had nothing to do with Fleming's case that he was actually charged with. They went to the second case where Mr. Myers alone was charged with those attempt murders. And just practically speaking, if we're on this, if I'm on that jury, I'm going to consider the most the most dangerous crimes first, the most serious ones. And those are the attempt murder of the two Chicago police officers. That taints the whole process as to Mr. Fleming. There's no way you can look at this record and say that Mr. Fleming, that this jury looked at Mr. Fleming's charges alone as to him without being tainted by this other evidence that came in as to Mr. Myers. Was the amount of evidence supporting the charges against Myers materially stronger than the evidence supporting count one? So is the evidence with regard materially stronger with regard to count two as opposed to count one or wasn't materially stronger? It was the same or is weaker? I'm sorry. You mean case one as opposed to case two? You're asking me if the evidence that came in regarding the attempt murders of the police officers was stronger? Well, two Chicago police officers testified, or three, that Mr. Myers shot a gun at them while he ran away. So the jury, why the jury chose not to convict him of the attempt murder and just the aggravated discharge as to the police officers, I don't know. I mean, it seems like looking at all this on the whole, they split the difference in a number of ways on this case. We don't know. But my argument is that we can't look at this case, all the improper evidence that came in, and say that this jury looked at Fleming's charges alone without the taint of the other evidence that came in. So we don't know. We can't say. I mean, the jury could have found him not guilty of all the offenses in case one but for all the evidence that came in with Myers. And it's notable that the jury found Mr. Fleming not guilty of the charge regarding Mr. Thomas, but only guilty of being accountable for actions of Myers as to Pendleton. Another harmful piece of evidence that came out was that during the cross-examination by co-defendant's counsel of Mr. Fleming actually ran after Mr. Thomas. Other than that, the only evidence we have regarding his accountability in this whole situation was that he got out of the car and then got back in. Mr. Thomas simply identified him as seeing a person with a red shirt get out of the car. I'm sorry, Pendleton testified initially that he saw a person with a red shirt get out of the car. And then Thomas said later he saw another person with a red shirt get back in the car. That's all we've got. That's all the evidence the state presented regarding Mr. Fleming's accountability for this offense. But for the trial court improperly granting the state's joint motion here. Does the court have any more questions on the first issue? No. Well, for the similar reasons as to why I'm arguing why there was prejudice as to this error, that also goes to why the state failed to prove beyond reasonable doubt that Mr. Fleming was accountable for Mr. Myers' actions. And Mr. Fleming respectfully requests this court to reverse his convictions outright, at the very least to grant him a new trial that would be completely separate from Mr. Myers' trial. So he has the opportunity to have a jury hear the actual charges against him and the evidence that actually applies to those charges as opposed to a whole host of evidence that was immaterial to his case and extremely prejudicial to his case. This is two Chicago police officers that his co-defendant is charged with trying to kill five minutes after he was with the same person in another case where he is charged with being  So he has the opportunity to have a jury hear his actions. This was an unfair trial. He deserves a trial with his own jury that's going to hear the evidence. Thank you, judges. Counsel, I take it you stand on your brief with respect to the other issue. Yes, Your Honor, I do. Thank you for pointing that out. May I please have the court? Matthew Connors on behalf of the people of the state of Illinois. I would like to begin by explaining that, Justice Neville, you got this right on with regards to defendant's argument regarding the joinder of the charge. Section 725 ILCS 5114-111-4, subsection B, specifically covers this incident. From a quote from the statute, it says, such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count. The plain language of the statute demonstrates in certain circumstances, not all defendants will share the liability for all of the same offenses. And this case falls squarely within the gambit of that kind of language. Okay. With that said, he said he was prejudiced by the way the prosecution handled it. What do you say? To the extent the defendant alleges prejudice, the first and most important thing must be noted is that co-defendant was acquitted of the charge of attempted murder of the police officers. So while defendants suggest that there was this pervasive taint that would have prohibited the jury from adequately considering the crimes that this defendant was charged with, and he states that the attempt for first degree murder was so overwhelming that it would have colored the jury's consideration of it, the jury rejected that. The jury found co-defendant not guilty of that charge. So step back. What else did the jury determine? The jury determined that our defendant was not guilty of the robbery of Thomas. So while defendants claims that the jury never gave proper consideration to his client's claims, the jury did and found the evidence as to one of the attempt armed robbery convictions insufficient. So we could demonstrate that the jury looked at all of these factors. The jury did the same thing with Thomas' convictions. This wasn't a rubber stamp. This was not a general verdict. This is not a question where the jury didn't know who to assign liability to. They considered each and every one of the elements. The limiting instruction was given by the circuit court. The parties ensured that the defendant was given instructions solely as to the charges for which he was under, he was charged, not a general verdict for all of those. The next argument the defendant points to would be something along the lines of, well, all of this other evidence was prejudicial. Well, it's not prejudicial because it stems from one comprehensive transaction. That's the talismanic phrase, comprehensive transaction. This is not a unique charge-by-charge accounting. Comprehensive transaction necessarily entails a broader scope, a larger understanding of all of the events that took place. But is there any evidence in case 2 that would be relevant to case 1? Yes. For the purposes of a comprehensive transaction. Well, but the evidence, if you were going to do that, there's nothing, it seems to me, that has to do with case 2. It has nothing to do with Mr. Fleming. So what evidence in case 2 would have any relevance to a charge against the case 1 against Fleming? Let me make sure I understand the question. When I use the term comprehensive transaction, the reason I begin with that language is because cases like May's and the cases that appear in the People's Brief demonstrate that in order to join these cases, you must look at all the circumstances beginning with what we call case 1, going all the way to completion, which would be the show-up identification. But one of the things you can look at is what evidence in case 2, in the other case, would be relevant to the first case. Okay. I mean, that's just a factor to look at. Yes, I understand. Like time's a factor, proximity's a factor, all this. So we do have, again, as you've located, time's a factor. Even in the reply brief, the defendant concedes. Five minutes later, defendant and co-defendant are together in the same vehicle that they've used. We understand that. Not only that we have flight from the scene together, we have a vehicle stopping, letting defendant and co-defendant out of a car before that vehicle carries on. We have defendant and co-defendant running through an alley and then separating. And then we have our defendant attempting to hide himself under a vehicle at 15 South Madison, I believe, while other police officers are looking at him. Furthermore, we then have an identification made not just by Thomas but by Pendleton at that location saying that is the person who I saw at 3300 West Whitwell. Well, how does that all go into a comprehensive transaction? Because that gives you the link. When they separated, he went his own way. He was running because of Case 1. I mean, he may have been involved in Case 1. Obviously, he was convicted. So it makes sense. He would hide and everything else. That has nothing to do with Case 2. Well, it does because that explains how it is that they came upon this defendant to suggest that Case 2 has nothing to do with it. Well, they didn't come upon him because Mr. Myers shot at the police officers. They came upon him in the course of the exact same transaction. To suggest that you would need to separate those charges means that you would need to have all of those witnesses present the same narrative in two separate proceedings and then say we can have testimony regarding the flight from the scene, regarding the car chase, and then regarding the attempt to hide underneath the vehicle again in the second case. There's an easy fix that Mr. Zebb spoke about, and that is they have two juries. Why would you not have two juries? Because at that point, we're discussing a simultaneous but severed trial. And that would not be consistent with Joinder because those would be a severed proceeding. In this case, the motion for Joinder was allowed so you would not have a severed proceeding. If there was a severed proceeding, you would have had that, but that's not what the circuit court exercised its discretion and did. I understand because that's why we're here. Yes. But it seems that if there had been, because of the – depending on if you accept some of the arguments of Mr. Zebb, but if you do in the prejudice argument, it could have been easily resolved by just having separate juries. And because you said that you were worried about the fact that the testimony would be the same and you would have to bring them back, and so efficiency and so forth would make it easier to have the trials together, and I understand that. But is there a way to avoid the prejudice, potential prejudice? Well, the question is not avoiding potential prejudice. The question before this Court is not whether the defendant was potentially prejudiced. The defendant must demonstrate that he was prejudiced and that but for the joinder, he would have been acquitted. Right. But at the outset, it would have been, the question would have been what would happen. Now we have the trial and we know what happened. And one of the things in the briefs is that there is no case that anyone found like this one with regard to a joinder of two cases where one defendant is not charged in the other case. That is correct. All right. The fact that this is so rare, the fact that this is outside the norm, I mean, there's thousands and thousands of appeals, and you haven't found one situation like this. That rings a bell. That's a red flag. I mean, when you have an outlier, there's something wrong. Otherwise, why would it be an outlier? So the fact that nobody's ever brought this to the attention of the appellate court is maybe one of the reasons is because of the potential prejudice and it hasn't occurred. And here, you know, for the reasons what happened, what we know from the record, at least if you accept Mr. Zeb's argument, that there was prejudice. The people said, first of all, that this is not much of an outlier because the plain language of the statute specifically refers to not all defendants must be charged together. That appears at 725 ILCS 5111-4. If you have plain language in the statute, this is not a question of statutory interpretation where we have to try to glean what it is the legislature was trying to say with that statement. Because if we take defendant's argument to its logical conclusion, that would mean that we would lose the ability to charge multiple defendants in the same indictment. Because he would be able to consistently say, oh, but there's prejudice. Well, but that's the issue. In not every case would there be prejudice. And that's why the rule's there. And his complaint is not about the rule. It's about the effect here and the fact that this has never come up before. Why has it never come up before? I mean, that — I would not be able to speak to that. Yeah, I know. But it's a question that's bothersome or troublesome in considering that there are so many situations where that rule applies. Now, excuse me, isn't part of the problem the fact that the judge at the very beginning said to the jury, both of these men were charged with all of these charges, all these counts, which clearly is not the case. There were some overlaps and there were some just for Meyers and there were some just for Fleming. So the jury goes into it starting thinking, oh, they're both charged with everything. And has that in their head. I'm having trouble reconciling that with how this joinder wasn't prejudicial. Because in this case, that's not the only thing that was said. That takes into — that utterly disregards all of the IPIs that were given. And in this case, we're discussing whether or not a jury properly instructed with the Illinois pattern jury instructions followed those instructions. And this Court, as of the Illinois Supreme Court, has both said, that is a bedrock principle that we assume that they did follow the instructions as given. So to say that a statement made in voir dire trumps IPIs, it seems incongruous. Except that there was — there appears to be no point at which somebody said, okay, at the end, here's what Fleming was charged with. Here's what Meyers was charged with. Go for it, jury. Yes, they were specifically charged — the jury was informed that each defendant was charged with specific offenses. So the jury instruction form for Fleming and defendant were separate, and they outlined the liability for each. The defendant concedes that each juror — each defendant received the proper jury instruction forms. So there's no question that the jury was charged properly. Now, the argument the defendant has posited is that there was an accountability instruction given, but the accountability instruction did not include an additional limitation instruction therein. Now, that is not an IPI. That is not something the defendant suggested below, and that is not something that he has alleged ineffective assistance before this Court. So there was a limiting instruction, as defendant — it's 3.05, which says, each defendant must be considered for only the charges for which they were charged with, and evidence considered against another defendant cannot be considered against that defendant. So that instruction was given. We have the proper verdict forms being given. And we have a jury that was obviously not overborne with the passions of that because the jury returned a verdict finding co-defendant not guilty of the most severe charge, found defendant not guilty of the first charge for which he was charged with, which is the attempt on robbery of Thomas. So all of those go to defeat defendant's claim that he was somehow prejudiced by the joinder in this case. Let me ask you this. Was the Mr. Fleming prejudiced when Myers' counsel asked the detective what it was that Myers — what it was that Pendleton told him that Myers did to him? Was Fleming prejudiced by that testimony? No, because you have a very interesting question as to — Pendleton had already defendant refers to the testimony where Pendleton told the detective defendant shot at him or co-defendant shot at him on two occasions. If anything, that impeaches the account that Pendleton gave at trial, which was he fell down to the ground, co-defendant shot once at him and said, break yourself, and at which point in time Pendleton got up and ran away. So if anything, defendant would have been — gotten a boon by saying that Pendleton's testimony impeached Pendleton's testimony on direct examination. So if anything, that would have given the jury additional reasons to reconsider the veracity of Pendleton's testimony. So he can't claim to be prejudiced based upon impeachment of that witness. Turning to defendant's second argument, it is a question of accountability, and as the people demonstrated in the Supreme Court case of Reed, there are a number of factors which establish defendant's accountability in this case. We have defendant's presence at the crime scene. This is not just a defendant who was standing idly by when a co-defendant got out of the car and attempted to rob Pendleton. We have testimony that says that Pendleton was wearing a mask. He and defendant ran out of the car, chased in opposite directions. We have testimony that there was a gunshot, and only after the gunshot, did defendant and co-defendant return to the car together. They then left the scene, were pursued by Pendleton, and they were pursued by a Chicago police officer. During the flight from there, the car stopped, defendant and co-defendant jumped out of the car and attempted to run away. Defendant then attempted to hide under a vehicle, was eventually detained by officers, and then identified in a show-up. So this isn't just mere presence. This is a defendant who was involved from the very beginning. This is a case where there is no question as to the identification, there's no question the defendant was there, and the only question is whether or not the jury's consideration of these factors was proper. Let me go back to the point. In your brief, you talk about the factors that should be considered in a comprehensive transaction. One of the factors, the identity of the evidence to be presented. Similarities in acts. How is this, is there any similarities in acts between Case 1 and Case 2? Yes, because again, in May, those cases set forth by the people, courts have specifically held that for the purposes, not as for accountability, but just for the purpose of comprehensive transaction, courts should consider flight from the scene of the crime. Mays, the case referred to by the people, occurred hours later. So we do have to consider the broader scope for the purposes, not necessarily of Argument 2, but for the purposes of a comprehensive transaction. So the flight from the scene coupled with jumping out of a vehicle and hiding under the car. But that all has to do with Count 1, or Case 1. Yes. But that's a necessary consideration. For Case 2? Yes. Because again, all of it must be taken, it is a comprehensive transaction. But that's this, that's where we're trying to get at. You can't, I mean, that, okay, what makes up a comprehensive transaction? That's exactly the distinction between the parties. The people are suggesting that a comprehensive transaction should not be viewed as comprehensive transaction number 1 for Count 1, comprehensive transaction for Count number 2. Comprehensive transaction includes the entire gambit of acts. It doesn't have to be a charge. Well, that's not what you have in your brief. It says similarities in acts. That's what it says. So I'm asking, what similarities in the acts between Case 1 and Case 2? The similarity from the acts stems solely for there would be no Case 2 but for Case 1. That's not a similarity. But there is a causal connection which is contemplated by all of the cases put forth which discuss a comprehensive transaction. Well, it seems like you're using the word comprehensive transaction, but I'm trying to break it down into how it's to be determined. So you can't give me specifics on similarities in the acts between Case 1 and Case 2? How about the identity of the evidence? Yes, the similarity of acts, the identity of the evidence is the same for both. We have the same witnesses. Well, it's not the identity of evidence, not the witnesses. The identity of the evidence is composed of the witness's testimony who testified in this case as to the defendant's continuous presence with co-defendant from the initial scene up until the time that he was detained under the vehicle. Right. So we would have said. And the fact he wasn't with. They were separated. One ran one way, one ran the other way. And what evidence in Case 1 has anything to do with what happened in Case 2? That's what I'm trying to find out, the identity of evidence. You could put on Case 2 without having Case 1 at all. No. Why not? Because at that point in time, if you were suggesting that Case 2 would exist, the case would have begun with two people running out of a car, with no context as to why they were running out of a car. It doesn't matter. Are you talking about when they got out of the car before the police chase, before the police were even involved in this? There were two times that they jumped out of the car. Correct. They jumped out of the car first. One went one way, one went the other way. Thomas's plumbing followed him. Pendleton says, you know, it was Meyer that was following him. Yes. So then they accomplish what they're doing with these, let's call them victims, and they get back in the car and then they run a red light. They run a red light, what bad luck for them. The cops stop them, you know, activate their lights, start to pull them over. They jump out of the car again. So they've jumped out of the same car twice now. Correct. If we are attempting to draw a line, please correct me if I'm mistaken, is my understanding that Justice Hyman is saying the line should be delineated at the time of the second charge, which should have been the second. I'm just saying what factors. To make a delineation, the second charge would have been the discharge at the police officers. Right. So then we are discussing at what point in time would you begin that process because for the extent that the recitation you just gave, this was not a traffic stop. This was a pursuit where as the vehicle containing defendant and co-defendant went over a speed bump, it slowed, the two men got out, and then the vehicle carried away. The vehicle containing defendant and co-defendant was never stopped. The officers testified. The guys just jumped out. The guys just jumped out. When they saw the cops. Correct. And they ran. They ran away. In the same direction but on different paths. Correct. And then at such point in time, defendant made it through the alley, whereas co-defendant was detained by the police after being shot at. Okay. So far you've got them for running from the police. Correct. But, again, the context of the flight... Your argument is why did they run from the police, and that's what happened before. That is essential to our understanding, and it's not just the people's understanding. It's essential to the comprehensive transaction language because they don't look at it as what is the comprehensive transaction as defendant refers to it as case two. Comprehensive transaction is a global term, hence the use of the term comprehensive. So we look at all of these factors together. Looking at them in isolation becomes a charge-by-charge analysis, which is not what the court has done. They look at it and say, these are the two charges. Is there a series of factors which link them? And they don't necessarily say, we can link charge one to charge two, but how do we link charge two back to charge one? In the cases put forth by the people where they say flight from the scene or they say evidence which is sufficient to help with the identification of a defendant, they don't say, well, the identification is helpful, therefore it goes back. They say, in terms of a comprehensive transaction, all of this evidence is considered together. And it's when taken together that necessitates a jointer. You talk about factors. Should we consider factors or acts? 111-4 deals with acts, the same act in the same comprehensive transaction rather than factors. Correct. So we should be considering acts as opposed to factors? No, the statute does refer to acts, but then the factors, just as Jaime referred to, is a framework that came from the case law where they say factors to be considered, and that's for considering the terms of jointer. So it's a different source of authority. If there are no further questions, for all of those reasons and those stated in the people's brief, we ask that you affirm the circuit court's ruling for jointer. We ask that you affirm defendant's convictions. Thank you. I'll be brief, Your Honors. Your Honors, the issue here isn't whether this was a single comprehensive transaction, because Fleming was not charged with the offenses in Case 2. As to the co-defendant Myers, yes, that's a question. Was this a single comprehensive transaction, and could his case be joined with Case 1 that he's charged with? Yes, that is an issue for Myers, but it's not for Mr. Fleming. Justice Hyman, you're correct, this is an outlier, and it's an outlier because the state screwed up in this case. They chose to indict this as a separate case. They consciously chose not to charge Mr. Fleming with Case 2, with those charges. Then 14 months later, they changed their minds, and then they're asking Mr. Fleming to bear the weight of their change of heart, and that is not fair. Well, it's only not fair if you can show prejudice. It's the same as not fair that doesn't get it. And we have. We have shown prejudice for all the reasons that I set forth in my brief, all the immaterial evidence that came in, the other crimes evidence in the form of all the testimony regarding shooting at the two police officers. We have, in answering Justice Paczynski's question about whether the jury was instructed properly, they were given those instructions, but their critical point is the jury was never told what evidence they could and could not consider. They weren't told when the evidence as to Case 1 ended and when Case 2 began. They were not told which specific evidence they could not consider or in which they could. And in the context of this accountability case, it was just all muddled. Mr. Fleming, this jury, did not solely consider the charges that Mr. Fleming was charged with. And it doesn't matter that Mr. Myers was acquitted of the most serious charge. He was still found guilty of aggravated discharge in Case 2. And Mr. Fleming was still convicted of two very serious charges. He's sentenced to 22 years in prison based on being held accountable for the actions of his co-defendant in this case. This is not good precedent for how a fair jury trial should be. Number one, the trial court should not have granted the joiner motion to begin with. The judge did not properly consider the potential prejudice that would occur if he granted the joiner in this case. And then at the very least, there should have been separate juries. That would have solved all the problems in this case. There would have been a clear point where Fleming's jury would have been taken out of the courtroom and they wouldn't have heard all this other evidence and we wouldn't be here today, at least not for this specific reason. Mr. Fleming respectfully requests this court to grant him a new trial with a new jury. And I think this is evidence that pertains to the charges he was actually charged with. Thank you. Thank you very much. Excuse me. Before we leave, I just want to point out one thing. I have noticed this more than once. You two attorneys are not responsible, but the trial attorneys that you work with and the judge, the order of commitment is not correct. It reflects the attempt for Mr. Fleming, but not the armed robbery charge. And I've seen it so often that it's frustrating because I think when the Department of Corrections gets a minimist, they should get the right documents. And so there are at least three attorneys in every courtroom, the judge, the defense attorney, the state's attorney, and someone who's an attorney should be looking at these documents to make sure that they correctly reflect what has actually happened in that courtroom. I'm not holding you guys responsible for this, but I'm asking you to go back and tell the other guys, Judge Patrinsky's on a roll. Duly noted, Your Honor. Thank you. Thank you. Thank you for your arguments. We'll take case under advisement. Thank you very much.